# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:26-CV-00003-KDB

EDWARD HUTTON,

    **Plaintiff,**

    v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

**MEMORANDUM AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Edward Hutton's appeal of an unfavorable administrative decision denying him a period of disability and disability insurance benefits under the Social Security Act. Doc. No. 1. Having reviewed and considered the parties' briefs, the administrative record, and applicable authority, and for the reasons set forth below, the Court finds that the Defendant Commissioner's decision to deny the Plaintiff Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

## I.      PROCEDURAL BACKGROUND

On May 13, 2022, Plaintiff Edward Hutton filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that he had been disabled since November 14, 2018 (amended to June 3, 2019). Doc. No. 4-2 at 17, 19. Hutton's claim was denied initially and upon reconsideration. *Id*. at 17. A telephone hearing was held before Administrative Law Judge ("ALJ") Todd Colarusso on November 7, 2024. *Id.* The ALJ denied Hutton's application in a decision dated November 15, 2024. *Id.* The Appeals Council

1

subsequently denied Hutton's request for review; thus, the ALJ's determination stands as the final decision of the Commissioner. *Id.* at 1. Hutton now timely seeks judicial review under 42 U.S.C. § 405(g).

## II. THE COMMISIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process ("SEP") established by the Social Security Administration ("SSA") to determine whether Hutton was disabled under the law during the relevant period.[1] At step one, the ALJ found that Hutton was not currently engaged in substantial gainful activity and had not done so from the amended alleged onset date of June 3, 2019 through his date last insured of December 31, 2023. Doc. No. 4-2 at 20 (citing 20 C.F.R. §§ 404.1571, et seq.). At step two, the ALJ determined that Hutton had the following severe impairments: "degenerative disc disease, degenerative joint disease, hypertension, gastroesophageal reflux disease, left foot plantar fibroma, [and] obesity." *Id.* At step three, the ALJ found that none of Hutton's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). *Id.* at 21. Before proceeding to step four, the ALJ determined that Hutton had the following residual functional capacity ("RFC"): "to perform light work as defined in 20 CFR 404.1567(b) except occasionally push/pull with the left lower

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but under step five the Commissioner must prove the claimant can perform other work in the national economy despite her limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

2

extremity; never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl; and avoid concentrated exposure to workplace hazards." *Id.*

At step four, the ALJ found that Hutton had no past relevant work. *Id.* at 26. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Hutton could perform based on his age, education, work experience, and RFC. *Id.* at 27. These jobs included garment sorter, order caller, and merchandise marker. *Id.* Thus, the ALJ found that Hutton was not disabled under the Social Security Act from June 3, 2019 through December 31, 2023, the date last insured. *Id.*

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604–05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98-99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high.

Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "This isn't a high threshold." *Drumgold*, 144 F.4th at 604. Accordingly, this Court does not review a final decision of the Commissioner *de novo, Metcalf v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the

---

[2] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

court defers to the ALJ's decision. *Id.*; *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

## IV.    DISCUSSION

In this appeal, Hutton asks the Court to remand his case based on his contention that the ALJ erred by failing to (1) perform a function-by-function analysis of his ability to sustain walking during the workday and (2) evaluate his need to elevate his lower extremities to alleviate chronic lower back pain and lumbar radiculopathy.

### A.    Analysis of Hutton's Walking Ability

Hutton first argues that the ALJ's failure to include a function-by-function analysis of his ability to sustain walking during the workday requires remand. Doc. No. 6 at 4. "'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Commissioner of Social Security Administration,* 986 F.3d 377, 388 (4th Cir. 2021) (citing *Thomas v. Berryhill,* 916 F.3d 307, 311 (4th Cir. 2019)). However, there is "no *per se* rule requiring remand any time the function-by-function analysis is deficient or even absent altogether." *Woodard v. Commissioner of Social Security,* No. 5:23-CV-00053-KDB, 2024 WL 50423, at *3 (W.D.N.C. Jan. 4, 2024) (citations omitted). Instead, "remand is necessary" when the Court is "left to guess" about how the ALJ arrived at his conclusions on a claimant's ability to perform relevant functions. *Mascio v. Colvin,* 780 F.3d 632, 637 (4th Cir. 2015).

5

In his critique of the ALJ's analysis of his walking ability, Hutton argues that the ALJ failed to discuss why his testimony was not supported by the evidence and form a "logical bridge between [Hutton's] medical treatment summary and the RFC." Doc. No. 6 at 5. Indeed, when an ALJ fails to discuss testimony and evidence related to the functions in his decision, remand is warranted to allow the ALJ to further explain the basis for his decision. *See Woodard,* 2024 WL 50423, at \*4. For example, in *Woodard,* this Court found that it was unable to conclude that the "ALJ sufficiently assessed [the claimant's] capacity to perform a relevant function, despite contradictory evidence in the record," because the ALJ failed to even mention the claimant's testimony regarding his inability to perform the sitting, standing, and walking demands required by the exertional level assigned in his RFC. *Id.*

Unlike *Woodard* and despite Hutton's claims to the contrary, the ALJ in this case both described why Hutton's statements and testimony about the severity of his symptoms were not consistent with the evidence in the record and built the requisite logical bridge between the record and Hutton's RFC. Here, after a thorough summary of the record, the ALJ noted that Hutton's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," and pointed to the instances in the record that supported his findings.[3] Doc. No. 4-2. at 26. In particular, the ALJ referenced June 2019, where Hutton reported left lower extremity weakness when walking for long periods of time, numbness and tingling in the left lower extremity, and lower back spasms and

---

[3] In supporting his position, the ALJ also drew on the opinions of state agency medical consultants, who opined that Hutton remained capable of light work in both July 2023 and in April 2024, finding them to be consistent with Hutton's treating physician and specialist, Dr. Kirshner. Doc. No. 4-2 at 26. The ALJ further referenced Hutton's October 2019 functional capacity evaluation, which represented Hutton's "minimal physical work capabilities and tolerances," and described him as being "presently capable of working an 8-hour day at a sedentary/light duty level due to his mobility limitations." *Id.* at 23.

6

stiffness but was ambulating normally without an assistive device, had normal standing balance, and required no assistance with any daily living activities. *Id.*

To the extent that Hutton argues that the evidence in the record supports an RFC that includes additional walking limitations on top of those included in a light exertional level restriction (Doc. No. 6 at 6-9), the "ALJs are the frontline decisionmakers who are best positioned to decide which pieces are persuasive and which pieces of evidence are not." *Drumgold,* 144 F.4th at 604. While the ALJ presiding over Hutton's claim could have gone to greater depths in explaining his rationale, there are no "inadequacies in the ALJ's analysis [that] frustrate meaningful review.'" *Mascio,* 780 F.3d at 636 (citation omitted). It is the duty of the ALJ to "[balance] the record," craft an RFC, and support it with substantial evidence." *See Jones v. Bisignano,* No. 1:25-CV-00288, 2026 WL 1615786, at *4 (W.D.N.C. June 5, 2026) (citing *Drumgold,* 144 F.4th at 604). When the ALJ fulfills this duty, as he has done in this case, the Court is obligated to affirm the decision of the Commissioner.

### B. The Elevation of Hutton's Lower Extremities

Hutton further claims that the ALJ erred in failing to evaluate his need to elevate his lower extremities to alleviate his chronic lower back pain and lumbar radiculopathy. Doc. No. 6. At 9. The "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Arakas,* 983 F.3d at 98 (citing *Lewis v. Berryhill,* 858 F.3d 858, 869 (4th Cir. 2017)). Nevertheless, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Jones,* 2026 WL 1615786, at *5 (citation omitted).

Here, although the ALJ's decision does not discuss Hutton's self-reported desire to elevate his lower extremities, the longitudinal record lacks medical evidence that would necessitate

7

explicit analysis by the ALJ. To be sure, at a number of worker's compensation medical visits between January and May 2019, Hutton reported that elevating his lower extremities was one of several measures he found helpful for reducing his pain.[4] *See* Doc. No. 4-7 at 29, 82, 116, 137, 147, 162, 173, 182. Yet he cites no point in the record where a medical provider even opined on lower extremity elevation, much less suggested or prescribed it.

And to the extent that Hutton asserts "numerous courts, including this one, have held that a failure to evaluate a claimant's alleged need to engage in LE elevation in the ALJ's decision requires that the decision be vacated," his claim is distinguishable from the decisions he cites as support. For example, in *Hall v. Berryhill,* the presiding ALJ actually made the determination that the claimant needed to elevate her legs due to her medical condition(s). No. 3:17-CV-00285-MOC, 2018 WL 1463702 at *2-*3 (W.D.N.C. Mar. 23, 2018) ("[B]oth the ALJ and claimant agree[d] that the elevation of the legs during the day [was] necessary."). Thus, the issue in that appeal pertained to the height at which the plaintiff needed to elevate her legs, not whether she needed to elevate them in the first place. *See id.* Because the ALJ failed to cite to any medical evidence to support his limitation, the ALJ's decision was remanded. *Id.* at *2. (. . . there is no medical evidence cited by the ALJ that supports the need for only 10 inches of elevation).

Here, Hutton asks the Court to do the opposite—remand when an ALJ implicitly concludes a limitation is not supported by medical evidence and therefore does not include it in a claimant's RFC as a result. The ALJ stated at the end of his analysis that "any testimony or allegations of greater limitations" than those included in Hutton's residual functional capacity were not "consistent with the preponderance of the evidence." Doc No. 4-2 at 26. It follows logically, and

---

[4] Hutton also reported that heat, ice, and position changes were helpful. *See* Doc. No. Doc. No. 4-7 at 29, 82, 116, 137, 147, 162, 173, 182. Notably, however, Hutton does not contend that the ALJ erred by failing to specifically mention those pain management tools.

is otherwise evident in the decision, that the ALJ found that the evidence on record did not support it being medically necessary for Hutton to elevate his lower extremities. "'In reviewing for substantial evidence, [the Court does] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment' for the ALJ's." *Arakas,* 983 F.3d at 95 (citation omitted). Accordingly, Hutton's appeal is **DENIED** and the Commissioner's decision is **AFFIRMED.**

## V. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1.      Plaintiff's appeal (Doc. No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**; and

2.      The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 15, 2026

Kenneth D. Bell
United States District Judge